DREW, J.
 

 11 Defendant, Diverious Holden, a trustee incarcerated in Winn Parish, was convicted at jury trial of four felony drug charges, all committed during his incarceration. He received a significant prison term for each crime, though all sentences were ordered to be served concurrently. The trial court ordered that these four concurrent sentences be served consecutively with the sentences he was serving when he breached the trust granted him as a trustee.
 

 This appeal involves his convictions of and sentences for the following crimes:
 

 • Possession of marijuana with intent to distribute, for which he was ultimately ordered to serve 20 years at hard labor;
 

 • Possession of cocaine with intent to distribute, for which he was sentenced to 20 years at hard labor, with the first two years to be served without benefits;
 

 • Possession of Xanax with intent to distribute, for which he was sentenced to serve 10 years at hard labor; and
 

 • Introduction of contraband into a penal institution, for which he received a sentence of five years at hard labor.
 

 He appeals his convictions and sentences. We affirm in all respects.
 

 FACTS
 

 In 2008, Holden was a trustee at the Winn Parish Jail, housed in a cell designated for such apparently reliable inmates. On the morning of May 15, Holden failed to report for his work detail. The infraction resulted in his loss of trustee status and a transfer to lockdown.
 

 Winn Parish Sheriffs Deputy Raymond Whittington, the jail warden, ordered Holden and another inmate out of their cell. Both were ordered to | ¿move their belongings into the hall.
 
 [1]
 
 Holden moved two lockers into the hall, one unlocked and the other locked. A search of the unlocked locker revealed only clothing. After cutting the lock from the other locker, Whit-tington found therein a sock containing marijuana, as well as individual packets of white powder and a nonprescription pill bottle containing approximately 45 pills. In addition, the locker also contained 69 packs of cigarettes and various legal personal items. Holden denied ownership of the drugs but admitted that the other items belonged to him.
 

 
 *1057
 
 Analysis of the suspected contraband from the locker revealed the items to be marijuana, cocaine, and alprazolam (Xa-nax). Holden was chai’ged with possession with intent to distribute the three drugs, as well as introduction of contraband into a penal institution.
 

 DISCUSSION
 

 1. Sufficiency of the Evidence
 

 Holden contends the evidence presented was insufficient to sustain the convictions of guilt, in that:
 

 • the testimony of the state’s witnesses was not credible;
 

 • the locker containing the drugs did not belong to him;
 

 • the state did not disprove that the drugs belonged to another inmate; and
 

 • the state did not prove that he specifically intended to distribute the drugs.
 

 Not surprisingly, the state disagrees, arguing that sufficient evidence was presented by which the jury could infer that Holden was a principal to |,,the offenses, and that the jury’s determination on witness credibility is not subject to review.
 

 Our law on sufficiency of the evidence is well settled.
 
 [2]
 
 Likewise, our law is
 
 *1058
 
 well settled relative to assessing the requisite proof for crimes of alleged possession of drugs with intent to distribute.
 
 [3]
 

 |ltThe state was easily able to establish the essential elements of the charged offenses.
 

 Deputy Raymond Whittington, the jail warden at the time of the incident, testified that:
 

 • he learned that Holden and another inmate had not gone to work on May 15, 2008, so he went to their cell, where he found Holden asleep;
 

 • after awakening Holden, Whittington prepared to move Holden to another cell for lockdown;
 

 • Holden moved his two standard-issue jail lockers into the hallway;
 

 • he (Whittington) used bolt cutters to remove the lock, finding the drugs;
 
 [4]
 

 • he consulted with Chief Deputy Gregg Davies about his discovery;
 

 |fi* Chief Davies called in Detective Darrell Winder to investigate the case;
 

 • the lockers were not labeled with names; however, Holden brought the lockers out of the cell himself when told to bring out his belongings;
 

 • the lock he cut off Holden’s locker was a “gun lock” that the sheriffs office supplied to the public;
 

 • these locks were not issued to inmates though some inmates had them;
 

 
 *1059
 
 • he first searched Holden’s unlocked locker, finding no contraband;
 

 • the sock containing the drugs had markings on it matching socks found in Holden’s unlocked locker;
 

 • no key was ever found for the lock; and
 

 • the lockers remained in the hallway outside the cell until he turned the investigation over to Winder.
 

 Chief Deputy Gregg Davies testified that:
 

 • Whittington informed him that Holden had not reported for work;
 

 • he (Davies) told Holden that he would lose his trustee privileges;
 

 • he instructed Whittington to move Holden from the trustee cell;
 

 • shortly thereafter, Whittington arrived at Davies’ office, showing him contraband that was confiscated from Holden’s locker;
 

 • he (Davies) observed marijuana inside the sock; and
 

 • he contacted Winder to take over the investigation.
 

 Winn Parish Detective Darrell Winder testified that:
 

 • Davies assigned him to investigate the discovery of drugs at the jail;
 

 • he (Winder) identified the evidence seized that day and confirmed that it had been in his possession since it was turned over to him;
 

 • he identified the sock that contained the marijuana, as well as a “Dollar General white pill bottle” containing 49 Xanax tablets, as well as the small packages of cocaine seized from Holden’s locker;
 

 !,;• sixty-nine packages of cigarettes were found inside the locker;
 

 • he took possession of the lock that had been cut from Holden’s locker;
 

 • inside the locker containing drugs, he found photos of Holden and his family;
 

 • he took photographs of the items taken from Holden’s locker;
 

 • he interviewed Holden, who waived his rights and voluntarily answered questions, admitting ownership of many items in the locker,
 
 [5]
 
 but not the drugs;
 

 • Holden initially denied having a key for the locker, but took Winder to the cell to look for it;
 

 • no key to the locker was found;
 

 • the sock containing drugs had an emblem drawn on it that matched socks Holden was wearing as well as other socks found in his other locker;
 

 • Holden indicated a former inmate gave the socks to him;
 

 • he (Winder) submitted the evidence to the crime lab for analysis;
 
 [6]
 

 • after analysis, the drugs were secured in the sheriffs evidence room;
 

 • he identified at trial the crime lab certificate reflecting that the substances tested positive for marijuana, cocaine, and alprazolam (Xanax);
 

 • the amount of marijuana recovered was more than someone usually had for personal use;
 

 • the cocaine was individually packaged, inconsistent with personal use;
 

 • the large quantity of pills was also inconsistent with personal usage;
 

 • when asked the significance of all these items being found together in the locker, he testified, “He’s got a store. He’s selling.”;
 

 17* there were approximately six inmates in the cell at the time the drugs were
 
 *1060
 
 found but he was unsure of how many lockers may have been in the cell;
 

 • he never searched Holden, nor was Holden drug screened, nor did he find any money; and
 

 • another inmate tested positive for marijuana.
 

 Johnny Lowery, another prisoner at the Winn Parish Jail, testified that:
 

 • he was a trustee with Holden on May 15, 2008;
 

 • a few weeks prior to that date, Holden asked Lowery for a lock and key, which Lowery provided him;
 

 • Holden put the lock on his locker;
 

 • Holden locked the locker every morning before leaving and unlocked it upon his return in the evening;
 

 • there were other lockers and locks, but none like what he had given Holden;
 

 • he (Lowery) had obtained the lock from another inmate, who had subsequently been released; and
 

 • he (Lowery) could not use the lock because his locker did not have a latch.
 

 Detective Winder was recalled as the only defense witness, testifying that:
 

 • he had been asked to obtain records detailing what inmates were housed in Holden’s cell on the day the drugs were discovered;
 

 • the records were unavailable, but he did recall a few of the inmates in the cell;
 

 • he again testified that he did not search any of the inmates or their lockers, nor did he ever find the key for the lock; and
 

 • no fingerprints were taken from the evidence because it had been handled by Whittington before Winder took possession of the items.
 

 _|¿¡Possession of the Drugs, with Intent to Distribute
 

 The evidence presented by the state was sufficient to convict Holden of the charged offenses. The state was required to prove beyond a reasonable doubt that Holden knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. With regard to each of the controlled substances, the state was able to show that the substances were found in the locker used by Holden to hold his possessions. When roused from his cell and told to gather his belongings, Holden independently removed the lockers to the hallway, evidencing his dominion over them. While Holden maintained two lockers, only the locker containing the drugs was locked. Several weeks prior to the discovery of the drugs, Holden had obtained a lock for use on the locker containing the contraband. Holden was seen locking the locker when departing his cell and unlocking it upon his return. It was reasonable for the jury to infer that Holden was aware that the contraband was in that locker.
 

 The quantity and packaging of the contraband was consistent with someone selling drugs, and inconsistent with personal use, and it was reasonable for the jury to conclude as much.
 

 Introduction of Contraband into a Penal Institution
 

 La. R.S. 14:402(E) provides, in pertinent part:
 

 It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail or to take or send or attempt to take or send therefrom, or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit:
 

 
 *1061
 
 i * * * 19
 

 (5) Any narcotic or hypnotic or exci-tive drug or any drugs of whatever kind or nature, including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally, or any other controlled dangerous substance as defined in R.S. 40:961, et seq.
 

 In order to convict Holden of introduction of contraband into a penal institution, it was necessary for the state to show that he introduced a controlled and dangerous substance upon the premises of a municipal or parish jail. It was proved that Holden was in possession of three controlled dangerous substances as defined in La. R.S. 40:964. Holden through his own efforts, or as a principal with the assistance of unknown others, caused the substances to be located in the jail. Holden’s knowledge of the presence of the substances could be inferred by his actions in secreting the contraband in his locker.
 

 II. Ineffective Assistance of Counsel
 

 Our law on ineffective assistance of counsel is well settled.
 
 [7]
 

 
 *1062
 
 1 mDefendant points to these issues in alleging ineffective assistance of counsel:
 

 (A) Sequestration violations;
 

 (B) Allowing the state’s court representative, a deputy, to testify as an expert on drug transactions, after hearing others testify; and
 

 (C) Improper chain of custody.
 

 Sequestration
 

 Defendant complains that his lawyer failed to object to the presence of Detective Winder in the courtroom during the testimony of two other material witnesses, prior to his taking the stand. Holden contends that Winder, the state’s representative at trial, should have testified before other witnesses.
 

 [T1The state responds that this record reflects no prejudice to Holden. Additionally, no objection was made during trial regarding any of the issues now being raised by Holden. With regard to Detective Winder, the state contends there was a sufficient foundation laid for his testimony.
 

 The purpose of sequestration is to assure that a witness testifies as to his own knowledge, to prevent witnesses from being influenced by the testimony of others, and to strengthen the role of cross-examination in developing facts. In examining sequestration violations, the reviewing court considers the facts of each case to determine whether or not prejudice resulted. A violation of a sequestration order does not warrant a mistrial unless the infraction materially prejudiced the defendant.
 
 See State v. Barber,
 
 30,019 (La.App. 2d Cir.1/21/98), 706 So.2d 563,
 
 writ denied,
 
 98-1353 (La.10/9/98), 726 So.2d 24.
 

 La. C.E. art. 615. Exclusion of witnesses, provides in part:
 

 A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
 

 B. Exceptions. This Article does not authorize exclusion of any of the following:
 

 * * *
 

 (2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney.
 

 Holden contends that Detective Winder’s testimony should have been taken prior to the testimony of other material witnesses in the case. The Instate argues that its case was presented in sequential order based on the witnesses’ involvement. Holden alleges that his trial attorney should have objected to this and his failure to do so, combined with other errors, requires that the convictions be reversed and the matter be remanded to the trial court for further proceedings.
 

 Expert Testimony by the State’s Court Representative, a Law Officer
 

 Even had he not been qualified as an expert, Detective Winder could have provided the testimony as a lay witness. Based on the detective’s vast experience with narcotics cases, it was permissible for the court to allow him to testify as to the inferences he drew from the observation of the drags seized from Holden.
 
 *1063
 
 After all witnesses in the matter were placed under the rule of sequestration, the state designated Detective Winder as its case representative. No objection was lodged to this designation by Holden. The trial proceeded, with the state calling two witnesses before Detective Winder testified.
 

 No error occurred in this instance. As noted by the state, the testimony of its witnesses was given in sequential order based on their involvement in the case. The majority of Detective Winder’s testimony was not cumulative of the testimony of the other witnesses in that each described their limited roles in the investigation. Detective Winder’s testimony centered around his own subsequent investigation of the matter, including his interview of Holden and his handling of the evidence obtained in the matter. Neither of the witnesses who testified prior to Detective Winder | ^discussed the investigation following the initial discovery of the contraband. The witnesses indicated in them testimony that they turned the investigation over to Detective Winder. While it is preferable that a case agent testify first (see
 
 comment (d) to La. C.E. art.
 
 615), failure to adhere to this procedure is not an absolute prejudice to the defendant. Based on the facts and circumstances presented herein, we cannot say that Holden was prejudiced by allowing Detective Winder to testify after hearing the testimony of the other witnesses.
 

 During the trial, Detective Winder testified that:
 

 • he had worked as a detective with the Winn Parish Sheriffs Office for 13 years and during that time he attended various drug training classes;
 

 • he had been involved in about 100 narcotics cases during his career, including matters involving marijuana, cocaine, and Xanax;
 

 • the amount of marijuana recovered from Holden’s locker was more than someone usually had for personal use;
 

 • the cocaine was individually packaged for sale and each package weighed 0.3 grams, another factor inconsistent with personal use; and
 

 • with respect to the Xanax, Winder indicated the large quantity of pills was also inconsistent with personal usage.
 

 In accordance with La. C.E. art. 701, it was permissible for Detective Winder to express his opinion regarding the packaging and quantity of the drugs found in Holden’s locker. An objection would have been for naught.
 

 Though usually claims of ineffectiveness of counsel are more properly raised on post conviction relief, this record is sufficient to review 114Holden’s claims. In determining whether Holden received ineffective assistance of counsel, it has not been shown by this record that trial counsel’s performance fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Even if prejudice is presumed, Holden has failed to show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Defendant has failed in proving his claim of ineffectiveness.
 

 Chain of Custody
 

 Holden contends that his trial counsel should have objected to the introduction of the evidence, since the state failed to sufficiently establish a chain of custody. The state contends no objection was made to the chain of custody during the trial and, furthermore, that neither the defendant’s brief nor the record discloses a fatal flaw in the chain of custody.
 

 
 *1064
 
 Our law on reviewing the chain of custody is well settled.
 
 [8]
 

 We can discern no break in the chain of evidence. Whittington discovered the items in Holden’s locker, took possession of the contraband, ^submitted it to the crime lab for analysis, and then kept it in the sheriffs evidence room until trial.
 

 Considering the testimony regarding the evidence, we do not find that there was any defect in the chain of custody, and even if a defect were presumed, it would have gone to the weight of the evidence as opposed to its admissibility. As it does not appear that there was any error in connection with the chain of custody, it was not necessary for counsel to lodge a meaningless objection. Counsel’s representation was reasonable and competent, as required by prevailing professional standards demanded for attorneys in criminal cases.
 

 Even if error could somehow be presumed, Holden has not shown that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Holden fails to specifically identify how the outcome of the trial would have been different had an objection to the chain been lodged. A defect in the chain of custody would not have rendered the evidence inadmissible but would have gone to the weight of the evidence. This argument falls far short of the mark.
 

 III.
 
 Excessiveness of Sentence
 

 Our law on review for excessiveness of sentence is well settled.
 
 [9]
 

 
 *1065
 
 | KjThe record shows that the trial judge was cognizant of the appropriate sentencing factors prior to imposing the sentence. Though Holden contends that a presen-tence investigation (PSI) was not utilized, the record lodged with this court does include a PSI. In the written ruling issued by the trial judge, it is noted that Holden was incarcerated as a result of two felony convictions for drug-related offenses
 
 [10]
 
 at the time of the instant offenses. While the trial judge does not list Holden’s social history |17in its ruling, it cannot be said that the trial judge was unaware of the factors Holden now contends were not considered.
 

 The trial court reviewed the sentencing guidelines listed in La. C. Cr. P. art. 894.1, as evidenced by the court’s finding that there would be an undue risk that during a period of a suspended sentence or probation, Holden would commit another crime. The trial judge also found that Holden was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution. Based on Holden’s criminal history, the court expressed doubt that Holden would respond affirmatively to probationary treatment. The court found no relevant mitigating factors.
 

 The sentences imposed are appropriate for this third felony offender who has previously failed to avail himself of the rehabilitative opportunity presented to him while incarcerated. Instead of seizing an opportunity to reform, Holden, while serving time for two prior drug offenses, embarked upon a venture to distribute drugs while incarcerated. Apparently this recidivist was undaunted by his incarceration. We cannot reward him for this attitude.
 

 CONCLUSION
 

 The evidence in this record, while circumstantial, is overwhelming, and amply justifies the four guilty verdicts.
 
 *1066
 
 The sentences, if anything, are light, considering the past actions of this repeat offender.
 

 [ |,)We find no errors patent.
 

 DECREE
 

 The defendant’s convictions and sentences are AFFIRMED.
 

 [1]
 

 . Most inmates typically kept their belongings in lockers issued by the jailer.
 

 [2]
 

 . When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La. 1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La. 10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir. 1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Bason,
 
 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La. 12/14/07), 970 So.2d 529.
 
 See also, State v. Bowie,
 
 43,374 (La.App. 2d Cir.9/24/08), 997 So.2d 36.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La. 1983);
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir. 1/14/09), 2 So.3d 582;
 
 State v. Parker,
 
 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La. 11/9/06), 941 So.2d 35.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State
 
 v.
 
 Casey,
 
 99-
 
 *1058
 
 0023 (La. 1/26/00), 775 So.2d 1022,
 
 cert, denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 [3]
 

 . To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. La. R.S. 40:967;
 
 State v. Moore,
 
 40,311 (La.App. 2d Cir.1/13/06) 920 So.2d 334,
 
 writ denied,
 
 2006-2267 (La.6/1/07), 957 So.2d 167.
 

 It is not necessary for the state to prove that the defendant was in actual possession of the contraband; rather, proof of constructive possession is sufficient. Constructive possession is shown when the state proves that the contraband was within the defendant’s dominion and control and that the defendant had knowledge of its presence.
 
 State v. Toups,
 
 01-1875 (La. 10/15/02), 833 So.2d 910;
 
 State v. Taylor,
 
 39,651 (La.App. 2d Cir.4/6/05), 900 So.2d 212;
 
 State v. Holland, 37,922
 
 (La.App. 2d Cir. 12/10/03), 862 So.2d 448.
 

 When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.
 
 State v. Brown,
 
 43,458 (La.App. 2d Cir.9/24/08), 996 So.2d 461.
 

 The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an inference of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute.
 
 State v. Clark,
 
 35,272 (La.App. 2d Cir. 12/5/01), 803 So.2d 280. Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute.
 
 State v. House,
 
 325 So.2d 222 (La. 1975);
 
 State v. Gladney,
 
 29,791 (La.App. 2d Cir.9/24/97), 700 So.2d 575. Mere possession of contraband does not amount to evidence of intent to distribute "unless the quantity is so large that no other inference is possible.”
 
 State v. Hearold, supra; State v. Greenway,
 
 422 So.2d 1146 (La. 1982). La. C.E. art. 701 permits a law enforcement officer to express an opinion regarding matters of personal knowledge gained through experience, even if the witness is not first qualified as an expert.
 
 Slate v. Lowery,
 
 609 So.2d 1125 (La.App. 2d Cir. 1992),
 
 writs denied,
 
 617 So.2d 905 (La. 1993).
 

 [4]
 

 . At trial, he identified the drugs and several other state exhibits.
 

 [5]
 

 . Including the 69 packages of cigarettes and his personal photos.
 

 [6]
 

 . He also identified the crime lab evidence transfer receipt.
 

 [7]
 

 . As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post conviction relief ("PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La. 1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. A motion for new trial is also an accepted vehicle by which to raise such a claim.
 
 Id.
 
 When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La. 1982);
 
 State v. Willars,
 
 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. King,
 
 2006-1903 (La. 10/16/07), 969 So.2d 1228;
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).
 

 To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland, supra.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App. 2d Cir.4/4/07), 954 So.2d 823,
 
 writ denied,
 
 2007-1193 (La. 12/7/07), 969 So.2d 629;
 
 State v. Moore,
 
 575 So.2d 928 (La.App. 2d Cir.1991). Also,
 
 State v. Tilmon,
 
 38,003 (La.App. 2d Cir.4/14/04), 870 So.2d 607,
 
 writ denied,
 
 2004-2011 (La. 12/17/04), 888 So.2d 866.
 

 Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial,
 
 i.e.,
 
 a trial whose result is reliable.
 
 Strickland, supra.
 
 The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174,
 
 writ denied,
 
 95-1398 (La. 11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice.
 
 Strickland, supra; State v. Jordan,
 
 35,643 (La.
 
 *1062
 
 App. 2d Cir.4/3/02), 813 So.2d 1123,
 
 writ denied,
 
 2002-1570 (La.5/30/03), 845 So.2d 1067.
 

 [8]
 

 . To admit demonstrative evidence at trial, an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case.
 
 State v. Toney,
 
 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387;
 
 State v. Daniels,
 
 614 So.2d 97 (La.App. 2d Cir. 1993),
 
 writ denied,
 
 619 So.2d 573 (La. 1993);
 
 State v. Caston,
 
 583 So.2d 42 (La.App. 2d Cir. 1991),
 
 writ denied,
 
 585 So.2d 575 (La. 1991).
 

 It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. The State need only establish by a preponderance of the evidence that the object is the one connected with the case.
 
 State v. Toney, supra.
 
 A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility.
 
 State v. Jackson,
 
 629 So.2d 1374 (La.App. 2d Cir. 1993),
 
 writ denied,
 
 94-0201 (La.5/6/94), 637 So.2d 1046. Also sec
 
 State v. Burd, supra.
 

 [9]
 

 . The defendant alleges the trial court failed to consider the appropriate factors in determining his sentence. The defendant indicates that the record is devoid of any indication that the trial judge complied with La. C. Cr. P. art. 894.1. The defendant specifically argues that adequate consideration was not given to his age, his minor son, and his drug addiction. The defendant further alleges that he is not the most egregious of offenders and that he is in need of rehabilitation for his drug addiction which could best be provided in a non custodial environment.
 

 The state counters that the trial judge adequately reviewed the appropriate sentencing criteria as evidenced by his written ruling. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Landos,
 
 419 So.2d 475 (La. 1982);
 
 State v. Hampton,
 
 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284,
 
 writs denied,
 
 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452. The important
 
 *1065
 
 elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747,
 
 writ denied,
 
 04-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Swayzer,
 
 43,-350 (La.App. 2d Cir.8/13/08), 989 So.2d 267;
 
 State v. Shumaker,
 
 41,547 (La.App. 2d Cir. 12/13/06), 945 So.2d 277,
 
 writ denied,
 
 07-0144 (La.9/28/07), 964 So.2d 351;
 
 State v. Jones,
 
 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392,
 
 writ denied,
 
 00-1467 (La.2/2/01), 783 So.2d 385.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 01-2574 (La. 1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La. 1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La. 1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La. 1992);
 
 State v. Robinson,
 
 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
 

 The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 State v. Williams,
 
 03-3514 (La. 12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Hardy,
 
 39,233 (La.App.2d Cir. 1/26/05), 892 So.2d 710.
 

 [10]
 

 . The defendant had prior felony convictions for possession of cocaine with intent to distribute (November 21, 2001) as well as possession of marijuana with intent to distribute and possession of Xanax with intent to distribute (August 28, 2007).