LOLLEY, J.
 

 [ [ This criminal appeal arises from the Forty-Second Judicial District Court, Parish of DeSoto, State of Louisiana. The defendant, Richard Wayne Booker, Jr. (“Booker”), was convicted of distribution of a Schedule I controlled dangerous substance, namely marijuana, a violation of La. R.S. 40:966(A)(1). He was sentenced to 5 years at hard labor. This appeal ensued. For the following reasons, we affirm Booker’s conviction and sentence.
 

 Facts
 

 After receiving information through a citizen’s complaint of drug sales in Logans-port, Louisiana, which is located in the western part of DeSoto Parish, the DeSoto Parish Sheriffs Office (“DPSO”) in conjunction with the Tri-Parish Narcotics Task Force (“task force”) initiated an investigation. DPSO enlisted a civilian agent, Dewayne Hunter, to assist in an undercover controlled purchase of marijuana from Booker. Hunter was at this time on probation after having been convicted of distributing marijuana himself. DPSO and the task force frequently utilize individuals convicted of drug charges to assist in drug investigations.
 

 On February 12, 2009, Cpl. Raymond Sharrow and Sgt. Keith Banta of the DPSO and the task force met with Hunter and explained to him how the operation would take place. They also planted audio and video recording devices in Hunter’s vehicle to monitor and record the investigation. Additionally, they searched Hunter’s person and vehicle to ensure there were no drugs, money, or weapons that
 
 *820
 
 could potentially corrupt the investigation. The only thing found was $15 in cash which was |2held by the officers for the duration of the investigation. Hunter was then given $40 cash of task force funds to use to purchase the marijuana from Booker. Hunter had previously arranged to meet Booker at his home in order to purchase $40 worth of marijuana. Hunter, discreetly followed by the two officers in a separate unmarked vehicle, drove to Booker’s home. However, after knocking on the front door, Hunter discovered Booker was not home. He then attempted to contact Booker on his cell phone and decided to go to another location where he predicted Booker would be in order to make the purchase. Hunter relayed this information to Cpl. Sharrow and Sgt. Banta and proceeded to the new location, while once again being tailed by the officers.
 

 The officers watched the transaction occur from the unmarked truck parked at a fire station approximately 100 yards from the location where Hunter was to meet Booker. As they watched, they saw Booker approach Hunter, who remained seated in his vehicle. After a few moments, the officers saw Booker retreat from Hunter’s vehicle while Hunter drove off from the area. The officers testified they recognized Booker as the person who approached Hunter’s vehicle because they were familiar with him from prior police work. The video camera in Hunter’s vehicle, pointed at the ceiling, did not show the face of the person who approached the vehicle. The audio portion of the transaction was recorded, although only parts of it are audible. On the video, Hunter is visible taking a plastic baggie and smelling it before eventually driving off. Hunter testified at trial that Booker sold him marijuana during the police investigation that day.
 

 13After the transaction, Hunter immediately met with the officers at an undisclosed location. While driving to that location he verbalized that he was putting the marijuana into the evidence bag. He next stated he was putting the bag into the center console of the vehicle. Once again, the video did not capture his actions, but the audio captured his explanation of what he was doing at the time, followed by the sound of the console closing. After arriving at the new location, Sgt. Banta retrieved a plastic baggie containing green vegetable matter from the center console of Hunter’s vehicle. He also retrieved an empty evidence bag from the same console. The officer placed the baggie of vegetable matter into the evidence bag. He then returned Hunter’s $15 to him. The video surveillance in the vehicle captured all of these events. The substance in the baggie later tested positive as marijuana. Subsequently, Booker was charged with distribution of marijuana. He was tried by a jury, convicted as charged, and sentenced to imprisonment for 5 years. This appeal ensued.
 

 Law and Discussion
 

 In this appeal, Booker asserts two assignments of error. First, he asserts the evidence presented was insufficient to sustain his conviction. Second, he asserts he was denied his right to effective assistance of counsel.
 

 Insufficiency of the Evidence
 

 Booker first asserts the evidence presented was insufficient to sustain his conviction. Specifically, he claims that while an encounter between him and Hunter was observed by the officers, no drug transaction was observed |4or caught on video surveillance. He also claims Hunter testified against him solely in the hope of having his own offenses dismissed by the state.
 

 
 *821
 
 The standard of appellate review for sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 807, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. The
 
 Jackson
 
 standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder.
 
 State v. Pigford,
 
 2005-0477 (La.02/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct | ^evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582,
 
 unit denied,
 
 2009-0372 (La.11/06/09), 21 So.3d 299. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Anderson,
 
 36,969 (La.App.2d Cir.04/09/03), 842 So.2d 1222. For circumstantial evidence to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
 

 Distribution of marijuana is defined in La. R.S. 40:966(A)(1), which provides:
 

 A. Manufacture; distribution. Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally:
 

 (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I.
 

 This assignment of error is essentially an attack on Hunter’s credibility as well as an attack on the circumstantial evidence presented at trial. This court is not in a position to assess the credibility of Hunter. Instead, we defer to the trial court’s assessment and examine whether it was a reasonable one. We acknowledge that the fact that Hunter is a convicted felon goes against his credibility; however, Hunter’s testimony was obviously accepted by the jury, the factfinder in this case. Additionally, | ^Hunter’s testimony was corroborated by what the officers testified they witnessed, what was depicted in the surveillance audio and video, and the circumstantial evidence.
 

 Hunter’s person and vehicle were searched by the investigating officers prior to the investigation. The officers testified that after this initial search the only money Hunter possessed was $40 cash, provided by the task force. At this time, his person and vehicle were also free of drugs.
 
 *822
 
 After the encounter between the two men and the subsequent search, Hunter no longer possessed the $40 in cash, but instead possessed a baggie of marijuana in the center console of his vehicle. The officers tailed Hunter the entire time and he neither deviated from the path of the investigation nor made a stop other than to meet with Booker. Further, there is an audio recording depicting a drug transaction involving Hunter in his vehicle. Booker’s face was not shown on the video; however, the officers only saw one person approach Hunter’s vehicle — Booker.
 

 The jury came to the conclusion that Booker distributed marijuana. After viewing the totality of the evidence, a rational trier of fact could have concluded beyond a reasonable doubt that the evidence presented by the state was sufficient to find the defendant guilty of distribution of marijuana; thus, Booker’s. argument to the contrary is without merit.
 

 Ineffective Assistance of Counsel
 

 In his second assignment of error Booker asserts he was denied his right to effective assistance of counsel due to his counsel’s failure to: (1) object to the admission into evidence of the marijuana, and (2) object to the |7admission into evidence of the crime lab report finding that the substance was in fact marijuana. He asserts his counsel should have objected to these admissions based on a break in the chain of custody of the marijuana, and that his failure to do so prejudiced his trial.
 

 The law on ineffective assistance of counsel is well settled. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App.2d Cir.09/26/07), 966 So.2d 139,
 
 writ denied,
 
 2007-2190 (La.04/04/08), 978 So.2d 325. A motion for new trial is also an accepted vehicle by which to raise such a claim.
 
 Id.
 
 When the record is sufficient, however, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App.2d Cir.09/27/95), 661 So.2d 673. In this case, the record is sufficient to dispose of the defendant’s claim on appeal.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. King,
 
 2006-1903 (La.10/16/07), 969 So.2d 1228;
 
 State v. Wry,
 
 591 So.2d 774 (La. App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): the defendant must first show that his attorney’s performance was deficient and, second, that the error prejudiced his defense. The first prong is satisfied by a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland, supra.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment.
 
 State v.
 
 
 *823
 

 Grant,
 
 41,745 (La.App.2d Cir.04/04/07), 954 So.2d 828,
 
 writ denied,
 
 2007-1193 (La.12/07/07), 969 So.2d 629;
 
 State v. Moore,
 
 575 So.2d 928 (La.App. 2d Cir. 1991). The second prong requires a showing that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial,
 
 ie.,
 
 a trial whose result is reliable.
 
 Strickland, supra.
 
 The defendant must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App.2d Cir.04/05/95), 658 So.2d 174,
 
 writ denied,
 
 1995-1398 (La.11/03/95), 662 So.2d 9.
 

 The law on the chain of custody of evidence is also well settled. To admit demonstrative evidence at trial, an object must be identified, either by testimony that the object is related to the case or by the chain of custody |gfrom the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case.
 
 State v. Holden,
 
 45,038 (La.App.2d Cir.01/27/10), 30 So.3d 1053,
 
 writ denied,
 
 2010-0491 (La.09/24/10), 45 So.3d 1072. It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. The state need only establish by a preponderance of the evidence that the object is the one connected with the case.
 
 State v. Toney,
 
 26,711 (La.App.2d Cir.03/01/95), 651 So.2d 387. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility.
 
 State v. Jackson,
 
 629 So.2d 1374 (La.App. 2d Cir.1993),
 
 writ denied,
 
 1994-0201 (La.05/06/94), 637 So.2d 1046.
 

 Here, the defendant claims that because his counsel did not object to the admissibility of the marijuana and the crime lab report on the basis of the chain of custody, he was denied effective assistance of counsel. This claim is not well founded. First, if the chain of custody of a piece of evidence is faulty, this goes to the weight of the evidence, not its admissibility in court. Therefore, defendant’s counsel was correct in not objecting to the admissibility on these grounds. Second, counsel did in fact point out the inconsistencies of testimony regarding who placed the marijuana into the evidence bag when she cross-examined Cpl. Sharrow:
 

 Question: Now at one point in the video you testified, when you were narrating, that the confidential informant was placing the marijuana into the evidence bag and sealing it.
 

 Answer: Uh-huh
 

 | mQuestion: However, at the end of the tape, do you agree that it shows the confidential informant taking the marijuana out of the console and then placing it into the evidence bag when you arrived at the location to meet him?
 

 Answer: I placed it in the evidence bag. I did make a mistake. Like I said, they’re real hard to get open and the sealants are hard. It’s hard to do it driving. But I did make a mistake. I thought he put it in there.
 

 The video surveillance from inside Hunter’s vehicle shows him sniffing a baggie during a transaction with Booker. Hunter stated he placed the marijuana into the evidence bag and placed the evidence bag into the center console of his vehicle, but he did not testify that he sealed the bag. Audio surveillance then depicts the sound of Hunter closing the center console. The video surveillance shows that when the officers opened the center console marijuana was found inside, slightly forward of the open evidence bag. This placement sug
 
 *824
 
 gests that Hunter put the marijuana into the evidence bag without sealing it, placed the evidence bag containing the marijuana into the center console, the marijuana slid out during transit, and the officers placed the marijuana back into the evidence bag and sealed it upon retrieval. The marijuana retrieved by the officers looked identical to the marijuana introduced at trial. It is reasonable that the jury believed the testimony of the officers and Hunter regarding the chain of custody of the marijuana as it was supported by audio and video surveillance. While the marijuana is an essential piece of evidence needed to convict Booker of distribution of marijuana, Booker’s counsel was not ineffective for faffing to object to its admissibility. The argument to the contrary is without merit.
 

 11 t Conclusion
 

 For the foregoing reasons, Richard Wayne Booker, Jr.’s conviction and sentence are affirmed.
 

 AFFIRMED.