747 So.2d 101 (1999)
STATE of Louisiana, Appellee,
v.
Bruce Edward SLOAN, Appellant.
No. 32,101-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*102 Wilson Rambo, La. Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul Carmouche, Dist. Atty., Catherine Estopinal, Asst. Dist. Atty., Counsel for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
BROWN, J.,
In an amended bill of information, defendant, Bruce Edward Sloan, was charged with two counts of communicating false information of a bomb threat, violations of La. R.S. 14:54.1. A jury convicted defendant of attempt on the first count; however, he was found not guilty on the second count. The trial court adjudicated defendant, who was previously convicted of possession of cocaine, a second felony offender and sentenced him to five years at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence.

FACTS
Deborah Smith, the receptionist at the downtown branch of Hibernia Bank, testified that on April 9, 1996, at approximately 11:00 or 11:30 a.m., she answered a phone call from a man who wanted to speak to Ann Bryant, who was working at the Mansfield Road branch. Ms. Smith attempted to transfer the call; however, the man phoned right back and she again tried to forward his call to Ms. Bryant. According to Ms. Smith, the man was "kind of upset" and said something to the effect of "we'll see what a bomb will do for you" and then he mentioned "three, six and twelve." Ms. Smith testified that the man called back approximately four more times and told her during one of the calls to tell Ann Bryant that "she had eleven minutes or seven minutes or something like that."
Ann Bryant, manager of the Hibernia branch on Mansfield Road, testified that on April 9, 1996, she received a phone call from a man who identified himself as Bruce Sloan. Ms. Bryant stated that the caller was upset about a home improvement loan she had made to his parents. Ms. Bryant testified that she received another phone call about an hour later and the caller again identified himself as Bruce Sloan. Ms. Bryant stated that the caller spoke about "the whole thing blowing up" and that she had "eleven minutes." Ms. Bryant stated that she received the first call around 11:30 a.m. and the second call at about 12:30 p.m.
The police department was notified by the bank and Captain Randy Stephens, a fire investigator and bomb technician with the Shreveport Fire Department, handled the investigation. He was told that defendant, Bruce Sloan, was a possible suspect. On that same day, April 9, 1996, Capt. Stephens interviewed defendant at defendant's residence. Defendant told Capt. Stevens that he had called Hibernia Bank that morning stating that "we'll see what a bomb can do at three, six and twelve" and *103 "tell Ann Bryant she has eleven minutes and counting." Defendant also stated that "he was going to blow the `MF' out of the water." Capt. Stephens further testified that defendant said that he was upset with Hibernia about a loan made to his father shortly before his death and that he wanted some attention to the situation.
The following day, April 10, 1996, Brenda Beasley, an executive secretary with KTBS-Channel Three, opened a letter that stated:
So there will be no need for death and sorrow, if you still don't believe ... remember Oklahoma City. I don't know but I have been told that soon your building might blow, could it be this week or maybe next week I wouldn't even pretend to guess, but my word you should heed so there will be no need for death and sorrow if you still don't believe.
The defense presented no evidence. Instead, defense counsel claimed that the state failed to prove that defendant made the telephone calls or sent the letter to KTBS. We note that "three, six and twelve" are the channels for the ABC, NBC and CBS affiliated TV stations in Shreveport, Louisiana. Capt. Stephens' written report reflects that defendant said that his intent was to "contact the media and inform them of how Hibernia Bank rips people off." Thus, the "bomb" would be media exposure. Although the defense had a copy of Capt. Stephens' report, this information was not presented to the jury.

DISCUSSION
As noted above, the jury acquitted defendant on the second count involving the letter to KTBS and returned a verdict of attempt to communicate false information of a bomb threat on count one. Defendant has raised the issue of sufficiency of evidence. A reasonable juror, however, could have concluded from the evidence presented at trial that the proof was sufficient that defendant in fact made the telephone calls and communicated a false bomb threat.
The jury was instructed, without objection, that attempt was a lesser and responsive verdict to the charge. The jury, in partial nullification, reduced defendant's sentencing exposure by returning a verdict of attempted communication of a false bomb threat. A person cannot be convicted of both a completed offense and an attempt to commit the offense; however, a person can be convicted of the lesser and responsive crime of attempt even if at trial it is shown that the charged or intended crime was actually perpetrated. La. R.S. 14:27C.
The defense has not questioned on appeal whether attempt is in fact a lesser and responsive charge. Regardless, under an error patent review, we must make that determination. If attempt is not a lesser and responsive charge we are required to reverse defendant's conviction.
La. R.S. 14:54.1(A) defines the communicating of false information of planned arson as follows:
Communicating of false information of arson or attempted arson is the intentional... conveyance, ... by the use of... telephone, ... of any threat or false information knowing the same to be false, including bomb threats ... concerning an attempt or alleged attempt being made, or to be made, to commit either aggravated or simple arson. (Emphasis added).
Communication of a threat has substantial inchoate elements. In this case, they include the threat to commit an arson which was never intended to occur.
The supreme court in State v. McKeel, 452 So.2d 1171 (La.1984), held that the gravamen of the offense, the communication of false information of arson, is that a threat must be made with knowledge that it is false. Obviously, if the threat was true then the communication, together with other supporting evidence, such as the possession of a bomb or the means for *104 its construction, would constitute an attempted arson.
Conspiracy, attempt, inciting a felony and solicitation for murder are classified in Title 14 of the Revised Statutes (the Criminal Code) as inchoate offenses. These offenses provide a legal basis for intervention to prevent a criminal act once an individual's actions have sufficiently manifested an intent to commit a crime. They also allow punishment for an actor who tries but fails to accomplish his intended crime.
The treatment of these inchoate acts as substantive offenses distinct from the completed crime that is their objective originated in the revision of the criminal law in 1942. See Dale E. Bennett and Cheney C. Joseph, Jr., The Louisiana Criminal Code of 1942Doctrinal Provisions, Defenses and Theories of Culpability, 52 La. L.Rev. 1083 (1992). Previously existing statutes, such as assault and burglary, were viewed in the nature of attempts.
Our law, however, has never punished an evil intent alone. The crimes of soliciting, inciting and conspiracy come closest to punishing evil intent. These offenses require only verbal requests, suggestions or discussions. Communication of a threat is similar in nature to these inchoate offenses. On the other hand, an attempt requires a "specific intent" to commit a particular crime and an "overt act" directed toward that end. La. R.S. 14:27. The overt act must be such that it demonstrates a firm purpose by the actor to complete his criminal intent. Article 27 further states that mere preparation to commit a crime shall not be sufficient to constitute an attempt.
A bomb scare, even if false, is upsetting, disruptive and costly. The legislature, recognizing this premise, enacted the communication of false information statute which specifically applies to telephoning or otherwise imparting false information concerning an attempt or alleged attempt to commit aggravated or simple arson.
The legislative intent was to provide a means of punishing an actor who makes bomb threats over the telephone. Prohibiting this type of behavior clearly is supported by strong social policies. There is no need, however, to extend this inchoate crime further to fulfill the policies underlying its proscription. A conviction of attempt to communicate a false threat would result in punishment of a perceived evil intent without a substantial overt act in furtherance of that intent beyond mere preparation.
In State v. Eames, 365 So.2d 1361, 1362 (La.1978) the supreme court stated:
An attempt is an inchoate offense. The crime of attempt is designed to punish certain activity which was not completed incipient criminal activity. It depends for its existence on a "specific intent to commit a crime." R.S. 14:27. If the definition of another crime includes the attempt to do something, the attempt statute, R.S. 14:27, cannot be employed, for then a defendant would be charged with an attempt to attempt to do an illegal act. The reporter's comment to R.S. 14:27 makes this clear:
This section is in accord with the general common law concept of attempt. An attempt to commit any crime is an offense, whether the offense attempted be a felony or merely a misdemeanor. Clark and Marshall, Law of Crimes (4th ed.1940) 153, 113. Since there can be no such thing as an attempt to commit an attempt, there can be no attempt to commit either an aggravated assault or a simple assault. Those offenses are themselves in the nature of attempts to commit a battery. See Clark and Marshall, supra, 156, s 114(d).
See also 28 La.L.Rev. 543, 544 (1968), footnote 115:
There is no such thing as attempted conspiracy. The courts refuse to apply the principle of the inchoate crime of attempt to other inchoate crimes. Note, 9 La.La.Rev. 413 (1949). *105 9 La.L.Rev. 413 was a case note on State ex rel. Clarence Duhon v. General Manager, Louisiana State Penitentiary, No. 39,091, July 20, 1948, in which this court approved without discussion the release on a writ of habeas corpus of one who had been convicted of attempted conspiracy without having filed a motion in arrest of judgment or having taken an appeal.
Since the bill could charge only one offense, and particularized the offense of inciting to riot, and since inciting to riot, as defined in the statute, is an inchoate offense, the verdict returned was not responsive, as there can be no attempt to incite, and inciting a riot was the only crime charged.
The rationale set forth in Eames was reaffirmed by our supreme court in State v. Campbell, 95-1409 (La.03/22/96), 670 So.2d 1212, 1213:
Because the offense of jury tampering encompasses the attempt to influence jurors for corrupt purposes, by means of direct or indirect communications or attempted communications, attempted jury tampering is not a lesser and included responsive offense for purposes of La. R.S. 14:27 or La.C.Cr.P. art 815. See State v. Dyer, 388 So.2d 374, 376 (La.1980) (if "the nature of the offense is such that proof of the attempted offense proves the substantive offense," attempt is not responsive to the charged offense); State v. Eames, 365 So.2d 1361 (La.1978) (same). Relators acquiesced in the list of responsive verdicts given jurors by the trial judge but the return of the unresponsive verdicts of attempted jury tampering constitutes an error patent on the face of the record and requires reversal of relators' convictions. State v. Mayeux, 498 So.2d 701 (La. 1986); State v. Thibodeaux, 380 So.2d 59 (La.1980); State v. Cook, 372 So.2d 1202 (La.1979).
Also, as stated in State v. Dyer, 388 So.2d 374, 375 (La.1980):
In prosecutions for illegal carrying of weapons, the state must prove that a defendant specifically intended to conceal the weapon on his person. Because a defendant's guilt is based on his intent to conceal, rather than the extent of his concealment, his conduct would be such that he either did or did not commit the substantive offense. In other words, the nature of the offense is such that proof of the attempted offense proves the substantive offense, as the elements of the attempted offense are the same as that of the substantive offense. Hence, it is obvious that attempted concealment, comprising the identical elements, cannot be a "lesser grade" of La. R.S. 14:95(A)(1). Proof of the elements of attempted concealment would not be proof of a "lesser offense" under La. R.S. 14:5 but would be proof of the greater offense alone. Accordingly, we agree with the trial judge's ruling that there can be no attempt to carry a concealed weapon.
The reasoning of Dyer, supra, is applicable to the instant case. The nature of the offense of communication of a false bomb threat is such that proof of the attempted offense proves the substantive offense, as the elements of the attempted offense are the same as that of the substantive offense. Additionally, as a matter of policy, to extend this offense further does not accomplish any legislative intent and serves only to add confusion. We find that attempt to communicate false information concerning an alleged attempted arson is not a lesser or responsive charge. There is no such crime. The trial court therefore erred in instructing the jury that attempt was a responsive verdict.
La.C.Cr.P. art. 598(A) provides that when a person is found guilty of a lesser degree of the offense charged, the verdict or judgment of the court is an acquittal of all greater offenses charged in the indictment and the defendant cannot thereafter be tried for those offenses on a new trial. The statute incorporates a fundamental *106 principle of double jeopardy law set forth in Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), which is that jeopardy for an offense does not continue after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge.

CONCLUSION
We therefore are compelled to REVERSE defendant's conviction and sentence. As set forth above, attempted communication of a false threat of an alleged attempted aggravated or simple arson is not a proscribed crime. Furthermore, in accordance with the mandates of double jeopardy law, because defendant was acquitted of the communication charge, he may not be retried on that charge.