STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1403

STATE OF LOUISIANA

VERSUS

CHARLES PAUL CELESTINE
AKA PAUL CHARLES CELESTINE
AKA CHARLES P. CELESTINE
AKA PAUL C. CELESTINE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 111,552
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

Michael Harson
District Attorney
Keith A. Stutes
Assistant District Attorney
Post Office Box 3306
Lafayette, Louisiana 70502-3306
(337) 232-5170
Counsel for Appellee:
        State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana 70602-1641
(337) 491-0570
Counsel for Defendant Appellant:
        Charles Paul Celestine

**KEATY, Judge.**

Defendant, Charles Paul Celestine, was convicted by a jury of aggravated rape and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. Defendant appeals his conviction only, alleging ineffective assistance of counsel in failing to request a *Daubert*[1] hearing relative to the evidentiary chain of custody and in failing to retain a DNA expert. For the following reasons, we affirm Defendant's conviction.

### FACTS AND PROCEDURAL HISTORY

On August 29, 1989, D.C.[2] started walking home from an area known as the "Strip" in Lafayette after an argument with her boyfriend. As she walked down Bendel Road, a man offered D.C. a ride, but she refused.[3] D.C. encountered a police officer on Pinhook Road, and he asked if she needed a ride. She again refused. D.C. encountered a second police officer near the intersection of Pinhook Road and Kaliste Saloom Road and again refused a ride home. D.C. continued to walk and turned onto Silverbell Parkway. D.C. testified she then noticed someone following her. The man chased her, caught her, threw her into a ditch, and raped her. D.C. testified that she thought the man who raped her was the first person who offered her a ride.

D.C. was brought to the hospital. A sexual assault examination was performed, and a sexual assault kit was delivered to the Acadiana Crime Lab. However, DNA profiles and comparisons were not being performed by the Acadiana Crime Lab in 1989.

---

[1]*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

[2]The initials of the victim are being used to protect her identity in accordance with La.R.S. 46:1844(W). The indictment lists the victim as D.A. The victim has since married; thus, her initials at the time of trial are used in this opinion.

[3]A map of the area was introduced as State's Exhibit 1.

In 2003, evidence from unsolved rape cases was sent by the Acadiana Crime Lab to other labs for DNA analysis. In 2003, one of the analyzing labs, Orchid Cellmark, generated a DNA profile from the sperm fraction of vaginal swabs taken from D.C. That DNA profile was entered into the Combined DNA Index System (CODIS). A CODIS hit matching Defendant's DNA profile with that found in the vaginal swabs subsequently occurred. A DNA sample was taken from Defendant in April 2006. The DNA profile from the sperm fraction of the vaginal swab matched the reference sample taken from Defendant in April 2006.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There are two errors patent.

First, the trial court failed to state that the sentence for the aggravated rape conviction was to be served at hard labor. La.R.S. 14:42(D)(1). In *State v. Loyden*, 04-1558, p. 6 (La.App. 3 Cir. 4/6/05), 899 So.2d 166, 172, this court explained, in pertinent part:

> [W]e find that the sentences imposed for the defendant's two aggravated rape convictions in this case are illegally lenient, because the trial court did not indicate that they were to be served at hard labor. Under the authority of La.Code Crim.P. art. 882, we amend the sentences imposed by the trial court to affirmatively indicate that the sentences for aggravated rape be served at hard labor. The district court is directed to make an entry in the minutes reflecting this amendment.

Consequently, the trial court's failure to order the sentence for aggravated rape to be served at hard labor renders it illegally lenient. However, this court will not consider an illegally lenient sentence unless it is a raised error. *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931.

The second errors patent concerns the trial court's reference to Defendant's post-conviction relief. The transcript of sentencing indicates the trial court, referring to post-conviction relief, informed Defendant that he has two years to file for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has two years after the conviction and sentence become final to seek post-conviction relief. Because the trial court's advisement was insufficient, the trial court is instructed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion and shall file written proof in the record that it issued the notice to Defendant. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## DISCUSSION

In his only assignment of error, Defendant contends trial counsel was ineffective in failing to request a *Daubert* hearing, in failing to object to the chain of custody, and in failing to retain a DNA expert.

> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief filed initially in the district court where a full evidentiary hearing can be held. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4th Cir.1990); *State v. Sparrow*, 612 So.2d 191 (La.App. 4th Cir.1992); *State v. Petta*, 496 So.2d 390 (La.App. 4th Cir.1986). However, in the interest of judicial economy, an appellate court can consider an ineffective assistance claim if the record on appeal contains sufficient evidence to evaluate the merits of the claim. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Haywood*, 516 So.2d 196 (La.App. 4th Cir.1987); *State v. Kelly*, 92-2446 (La.App. 4 Cir. 7/8/94), 639 So.2d 888. Such is the case here.
>
> To succeed on an ineffective assistance of counsel claim, a defendant must establish two criteria: (i) that his trial counsel's performance was deficient and (ii) that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). A claim of ineffective assistance may be disposed of based upon a finding that either one of the two *Strickland* criteria have not been established.

3

> *State v. James*, 555 So.2d 519, 524 (La.App. 4th Cir.1989); *State v.*
> *Frazier*, 599 So.2d 419, 421 (La.App. 4th Cir.1992).

*State v. Robinson*, 11-66, pp. 11-12 (La.App. 4 Cir. 12/7/11), 81 So.3d 90, 96-97.

Defendant sets forth the following in brief to this court:

> Randy Vincent, a former investigator with the Lafayette Police
> Department, testified he was dispatched on October 29, 1989 to the
> University Medical Center in reference to a sexual assault. Officer
> Vincent met with D.C. and sexual assault counselors at the hospital.
> Officer Vincent then took possession of the sexual assault kit D.C.
> submitted to. Officer Vincent then delivered the evidence to the
> Acadiana Crime Lab. The form entered into evidence, S-4, indicates
> M. Marlette delivered the evidence to Joey Verret, and the person who
> performed the examination was David Epstein. David Epstein was
> not called as a witness nor was there an objection as to the chain of
> custody. S-8 indicates that ACL then sent the evidence by Airborne
> Express to Orchid Cell Mark [sic]. Once again there was no objection
> to the chain of custody nor did Defense counsel request a *Daubert*
> hearing or independent examination of the DNA evidence.

> A review of the record shows evidence of the DNA matches
> was the only evidence linking Charles Celestine to the D.C. rape.

The State asserts DNA testing and its methodology have long been accepted

in Louisiana courts. The State also asserts Defendant fails to argue the justification

for a *Daubert* hearing. In support of its argument, the State cites *State v.*

*Quatrevingt*, 93-1644 (La. 2/28/96), 670 So.2d 197, *cert. denied*, 519 U.S. 927,

117 S.Ct. 294 (1996), wherein the supreme court held that the principles of DNA

profiling and Restriction Fragment Length Polymorphism analysis were both

relevant and reliable and were, therefore, admissible. The State also cites La.R.S.

15:441, which was repealed effective January 1, 1989. We presume the State

meant to cite La.R.S. 15:441.1, which provides: "[e]vidence of deoxyribonucleic

acid profiles, genetic markers of the blood, and secretor status of the saliva offered

to establish the identity of the offender of any crime is relevant as proof in

conformity with the Louisiana Code of Evidence."

4

The State asserts the chain of custody goes solely to the weight of the evidence and need only be established by a preponderance of the evidence. The State also asserts that:

> the evidence is clear from the testimony of D.[C]., from whom the vaginal swabs were taken, from Detective Vincent who retrieved the sexual assault kit containing the swabs, and who delivered the swabs to the Acadiana Crime Lab, from Chemist Joey Verret who received the swabs and found them to contain semen, from DNA experts Winnie Kurowski and Carolyn Booker who confirmed the presence of semen in the sex assault kit swabs and who confirmed and adopted the DNA profiles generated from the sex assault kit swabs, from Sgt. Monde Potier who personally obtained DNA samples from the defendant Charles Paul Celestine and who delivered the defendant's samples to the Acadiana Crime Lab, and from DNA experts Kurowski and Booker who derived a DNA profile from the samples from the defendant, who compared the defendant's DNA profile to the male sperm DNA from the sex assault kit swab taken from the victim D.[C]., and who confirmed them to be a match.

*Daubert*

Defendant notes the only evidence linking him to the rape of D.C. was DNA evidence, and trial counsel failed to object to the validity of the test methodology under a *Daubert* analysis regarding the testing done by Acadiana Crime Lab or Orchid Cellmark. Defendant asserts there can be no explanation why trial counsel failed to request a *Daubert* hearing.

Defendant does not declare any error in the methodology used by Acadiana Crime Lab and/or Orchid Cellmark. General statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel. *State v. Camp*, 46,052 (La.App. 2 Cir. 3/16/11), 59 So.3d 548, *writ denied*, 11-954 (La. 12/16/11), 76 So.3d 1199. Thus, this claim of ineffective assistance of is without merit.

Chain of Custody

Defendant notes that trial counsel did not object to the chain of custody for DNA recovered from vaginal swabs taken from D.C. on the night of the alleged

offense. Defendant asserts there can be no legitimate trial strategy as to why trial counsel did not object to the chain of custody for the vaginal swabs taken from D.C. He contends that without establishing who performed the sexual assault kit, how his DNA was recovered from the vaginal swabs, and who turned the sexual assault kit over to Officer Randy Vincent, the State was allowed to circumvent the chain of custody. He asserts trial counsel was ineffective in failing to object to the chain of custody from the initial evidence collected to the transfer to Orchid Cellmark by Airborne Express.

> To admit demonstrative evidence at trial, an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. *State v. Holden*, 45,038 (La.App.2d Cir.01/27/10), 30 So.3d 1053, *writ denied*, 2010-0491 (La.09/24/10), 45 So.3d 1072. It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. The state need only establish by a preponderance of the evidence that the object is the one connected with the case. *State v. Toney*, 26,711 (La.App.2d Cir.03/01/95), 651 So.2d 387. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. *State v. Jackson*, 629 So.2d 1374 (La.App. 2d Cir.1993), *writ denied*, 1994-0201 (La.05/06/94), 637 So.2d 1046.

*State v. Booker*, 46,256, pp. 8-9 (La.App. 2 Cir. 5/18/11), 70 So.3d 818, 823.

D.C. testified that a rape kit was performed on her. Captain Randy Vincent came into possession of the sexual assault kit at University Medical Center and completed the property record admitted as State's Exhibit 3. Captain Vincent made a request that the sexual assault kit be delivered to the crime lab. He also gave instructions to the crime lab as indicated by State's Exhibit 4. Captain Vincent testified that State's Exhibit 5 bore the signature of the lab personnel who received the evidence, which included one sexual evidence collection kit, one brown bag containing the victim's clothing and shoes, and one brown envelope containing fingernail samples from the victim. The person who received the

evidence was Joey Verret. Captain Vincent testified that the sexual assault kit was in fact delivered to the Acadiana Crime Lab. Additionally, State's Exhibit 5 appears to display the signature of Marlette as the person delivering the sexual assault kit to the lab.

Joey Verret worked as a serologist at the Acadiana Crime Lab in 1989. Verret testified that he received the evidence listed on State's Exhibit 5. The Acadiana Crime Lab report admitted as State's Exhibit 6 indicated he took possession of the sexual assault kit. The report stated the evidence was delivered to the lab by M. Marlette. Verret testified he examined the sexual assault kit for semen stains. Verret issued the report, which was admitted as State's Exhibit 7, regarding the vaginal smear slide and swab.

Carolyn Booker, a DNA analyst and DNA database administrator at the Acadiana Crime Lab, testified that as part of the search for a serial killer in 2003, DNA from unsolved rape cases was sent to other labs for testing. Orchid Cellmark performed the DNA analysis in the case at bar and forwarded the results to the Acadiana Crime Lab. When the results were received by the Acadiana Crime Lab, the results were reviewed and she "made sure that the data look[ed] good and that they followed all the perimeters that [were] set out in the contract and all the protocols were followed properly." A report was then written by Acadiana Crime Lab based on the data provided by Orchid Cellmark.

Winnie Kurowski, a forensic chemist at the Acadiana Crime Lab, testified that the Acadiana Crime Lab sent a sealed envelope containing reference blood from D.C. and a sealed envelope containing vaginal swabs to Orchid Cellmark. Kurowski testified the two items were obtained from the sexual assault kit. Kurowski also testified that when the evidence was sent to Orchid Cellmark, the Acadiana Crime Lab requested the type of kits Orchid Cellmark was to use and the

method used to analyze the DNA. Kurowski further testified that once the results were received, the Acadiana Crime Lab "go[es] through that data, make[s] sure that it matches up to that table that's generated and to ensure that the quality . . . is met that everything was done correctly. The controls were performed correctly."

State's Exhibit 8, a forensic case report issued by Orchid Cellmark, indicated that Orchid Cellmark received a sealed envelope containing a victim reference blood sample from D.C. and a sealed envelope containing vaginal swabs via Airborne Express on August 26, 2003. Testimony indicated that David Epstein, who was not called to testify, tested the victim's blood for alcohol.

The State did not present testimony regarding who performed the sexual assault examination and collected evidence found in the sexual assault kit. However, D.C. was subjected to an examination, and Captain Vincent came into possession of the sexual assault kit at the hospital. Also, the State did not present any evidence regarding transmittal/receipt of the items from the sexual assault kit by Airborne Express to Orchid Cellmark. However, Orchid Cellmark's report indicated it received the same evidence that Kurowski testified Acadiana Crime Lab sent to Orchid Cellmark, and DNA from the reference blood sample matched DNA from the non-sperm fraction of the vaginal swab.

The record supports a finding that it is more probable than not that the tested scientific evidence was connected to the case at bar. Additionally, there is no indication in the record of evidence tampering or that evidence was compromised in any way. Furthermore, any defect in the chain of custody goes to the weight of the evidence, not its admissibility. For these reasons, trial counsel was not ineffective for failing to object to the chain of custody regarding the collection of evidence from D.C. through its testing at Orchid Cellmark.

<u>Expert</u>

Defendant contends trial counsel was also ineffective for failing to retain an expert in DNA analysis or ask for independent testing of the DNA recovered.

Defendant does not set forth a reason why trial counsel should have obtained an expert in DNA analysis or asked for independent testing of the DNA recovered. General statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel. *Camp*, 59 So.3d 548. Thus, this claim of ineffective assistance of counsel is also without merit.

## CONCLUSION

Defendant's claims of ineffective assistance of counsel lack merit, and his conviction is affirmed. The trial court's advisement regarding the time Defendant has for filing an application for post-conviction relief was insufficient. The trial court shall inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion and file written proof in the record that it issued notice to Defendant.

**AFFIRMED.**